UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOHN FELTY, ET AL. | CIVIL ACTION NO. 20-0634 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHUBB & SON, INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Great Northern Insurance Company's ("GNIC" or "Defendant") Motion for Partial Summary Judgment Dismissing Claims for Bad Faith, Mental Anguish, and Diminution of Value. See Record Document 61. Plaintiffs John and Jessica Felty (collectively "the Feltys" or "Plaintiffs") oppose the motion. See Record Document 64. GNIC then filed a reply. See Record Document 71. Plaintiffs then filed a Supplemental Memorandum in Opposition (Record Document 89), to which Defendant replied (Record Document 90). For the reasons set forth below, the motion is **GRANTED**.

**FACTUAL & PROCEDURAL BACKGROUND**

This case involves claims by the Feltys for disputed hail damages allegedly sustained on April 6, 2018, to their home located in Shreveport, Louisiana ("the property").[1] See Record Document 1. In the fall of 2018, Plaintiffs noticed interior leaks in their home. See Record Document 61-79 at 4. The claim was reported to GNIC on January 17, 2019. See Record Document 61-6. That same day, GNIC called Plaintiffs and discussed the claim with them and their contractor, Curt Cobb of Precision Construction & Roofing ("PCR"). See Record Document 61-7. By January 18, 2019, GNIC

---

[1] These facts are taken from GNIC's Statement of Uncontested Facts (Record Document 61-4), as each of the facts was admitted by Plaintiffs. See Record Document 64-1.

had assigned RYZE Claims Solutions to investigate and adjust the claimed loss, with Doug DuBois ("Mr. DuBois") as the RYZE-assigned independent adjuster. See Record Document 61-9.

On January 22, 2019, Mr. DuBois provided GNIC an initial "Status Report," which advised he had contacted Plaintiffs and PCR about scheduling an inspection. See Record Document 61-12. The property was inspected on February 1, 2019, with John Felty and PCR in attendance. See Record Document 61-13. Based on this inspection, Mr. DuBois provided GNIC with his "First Report," which advised that, due to the condition of the roof, he was unable to determine if it sustained hail damage. See id.

Based on the recommendation in the First Report, GNIC retained Donan Engineering Co., Inc. ("Donan") to determine the claimed cause of loss to the property's roof. See Record Document 61-15. Donan assigned Christopher Soller ("Mr. Soller"), a forensic engineer, to investigate the claim and conduct an inspection of the property. See Record Document 61-19. GNIC advised Plaintiffs of the retention of an engineer through a phone call and a reservation of rights letter. See Record Document 61-16 and 61-17.

Plaintiffs retained Justin "Colt" Friday ("Mr. Friday") to represent them as their public adjuster and notified GNIC of this on February 12, 2019. See Record Document 61-20. Mr. Friday's letter of representation, signed by Plaintiffs, directed all communications, correspondence, and checks be sent to Mr. Friday. See id.

Mr. Soller conducted an inspection of the property on February 15, 2019, with Mr. Friday and PCR present. See Record Document 61-24. On February 19, 2019, Mr. Soller advised GNIC that there was overlapping hail and wear/tear damage to the roof but confirmed that there would be matching issues if just the hail-damaged slate shingles

were replaced. See id.; see also Record Document 61-23. GNIC advised Mr. DuBois and Mr. Friday of Mr. Soller's findings. See Record Document 61-25. GNIC also advised Mr. DuBois that Mr. Soller had confirmed the hail damage and requested that he write an estimate for full replacement of the roof. See id. Mr. DuBois advised that he would reach an agreed price with Mr. Friday. See id.

On February 28, 2019, Mr. DuBois issued another report advising he had been working with Mr. Friday to obtain an agreed-upon repair cost, and that he would keep GNIC apprised as negotiations proceeded. See Record Document 61-27. On March 11, 2019, Mr. DuBois issued his "Final Report," which advised that Mr. Friday "made several concessions" and ultimately agreed with Mr. DuBois' estimated repair price. See Record Document 61-28. Mr. DuBois recommended payment to Plaintiffs of $135,167.92 as the actual cash value ("ACV") of the claimed loss. See id. On March 12, 2019, GNIC's claims examiner requested payment of the recommended ACV payment amount.[2] See Record Document 61-31. The next day, the payment request was approved, and GNIC's claims examiner spoke with Mr. Friday to advise him of the payment amount and the need for a signed roofing contract. See Record Document 61-35.

On March 14, 2019, GNIC issued the ACV payment to Plaintiffs. See Record Document 61-36. In May 2019, GNIC reached out to Mr. Friday to discuss whether Plaintiffs had received the initial payment and reiterated the outstanding need for the signed roofing contract. See Record Document 61-38.

---

[2] The parties agreed to a replacement cost value ("RCV") of $193,432.05. The recommended ACV payment amount deducted $58,264.13 in depreciation, but Plaintiffs were advised that GNIC needed the signed roofing contract to release the depreciation holdback amount. See Record Document 61-4 at ¶¶ 20, 24.

By letter dated June 3, 2019, Mr. Friday advised GNIC that Plaintiffs' mortgage was bought by a new mortgage company and that a new check will need to be issued. See Record Document 61-41. After requesting clarification, GNIC was advised that Plaintiffs had a mortgage with AmeriHome and GNIC required Plaintiffs to submit documentation evidencing the new mortgage information. See id. On June 27, 2019, Mr. Friday provided Plaintiffs' "current Mortgage Statement," and GNIC's claims adjuster requested that the ACV payment be reissued with the new Lender as payee. See Record Document 61-43. GNIC reissued the payment on June 28, 2019. See Record Document 61-45. However, on July 29, 2019, Mr. Friday advised that Plaintiffs did not receive the re-issued check. See Record Document 61-46. Payment was re-issued and overnighted to the Plaintiffs on July 30, 2019. See Record Documents 61-48 and 61-49. On August 2, 2019, Mr. Friday advised GNIC that the new check did not contain the correct mortgage company, so GNIC re-issued and overnighted the check to Plaintiffs after receiving documentation from Mr. Friday. See Record Document 61-4 at ¶¶ 38-40.

On August 7, 2019, Mr. Friday provided a supplemental demand for payment, wherein Plaintiffs made demand for $236,466.09. See Record Document 61-54. GNIC inquired why it was not advised of the revised estimate sooner, to which Mr. Friday responded that he had just received the information in the revised estimate. See Record Documents 61-54, 61-55, and 61-56. GNIC then contacted Young & Associates to have the property re-inspected and have Mr. Friday's supplemental estimate reviewed by a building consultant. See Record Document 61-57.

Young & Associates assigned Matthew Holmes, a building consultant, to coordinate a joint inspection of the property. See Record Document 61-59. The inspection

occurred on August 19, 2019. See Record Document 61-60. On August 23, 2019, Mr. Holmes advised that repairs to the roof were complete and that he requested a final invoice for those repairs. See Record Document 61-61. Three days later, Mr. Friday provided a document entitled "Estimate of Repairs" from PCR claiming $288,962.72 for repairs to the roof. See Record Document 61-62. GNIC requested that PCR provide the "actual invoice" rather than an estimate, since the work had been completed. See Record Document 61-63. Mr. Holmes subsequently advised GNIC that Mr. Friday was in the process of obtaining the signed contracts for actual costs incurred, and that he and Mr. Friday had agreed to manually remove certain upgrade costs from a final agreed scope. See Record Document 61-65.

On August 28, 2019, Mr. Friday provided a "Final Invoice" and "Estimated Interior Damages" to arrive at the final claim amount of $300,117.54. See Record Documents 61-66 and 61-67. On September 2, 2019, Mr. Holmes advised GNIC that he was in agreement with Mr. Friday's final figures. See Record Document 61-70. By September 17, 2019, payment of the remaining $164.949.62 was overnighted to Plaintiffs. See Record Documents 61-73 and 61-74.

GNIC heard nothing further from Plaintiffs until learning on April 6, 2020, that Plaintiffs had filed suit against GNIC for alleged breach of contract and bad faith. See Record Document 61-4 at ¶ 61. On June 18, 2020, Plaintiffs entered into a contract with Foster-Somerland Enterprises, LLC, signed by its principal Jeff Foster, for repairs to the interior of their home in the sum of $22,282.80. See Record Document 61-78. On September 7, 2020, GNIC received a "Supplemental Demand" letter, notifying GNIC for the first time of interior work performed by Foster-Somerland in the claimed amount of

$60,438.35. See Record Document 61-80. Following receipt of the supplemental demand letter, GNIC asked Mr. Holmes to evaluate the newly-claimed damages and costs and conduct a re-inspection of the property. See Record Document 61-81. The property was inspected again on October 16, 2020. See id.

On November 20, 2020, Mr. Holmes issued his initial report on the re-inspection and supplemental demand, but did not recommend any additional payment because the repairs had already been completed at the time of the inspection and the contractor had not provided any documentation in response to Mr. Holmes' request to substantiate the additional repairs and associated costs. See id. After receiving some documentation from Jeff Foster, Mr. Holmes advised GNIC that the scope of work in the Supplemental Demand "appears to have far exceeded the initial scope of required repairs following the date of loss." Record Document 61-82 at 8. Mr. Holmes noted that full renovations to affected areas appear to have been performed, including items that were not initially believed to be required, and concluded that these amounts were not a direct result of hail. See id. Plaintiffs have been paid $300,117.54 in undisputed amounts for their claim and all unpaid amounts are disputed. See Record Document 61-84.

As noted earlier, Plaintiffs filed this lawsuit on April 6, 2020, in the First Judicial District Court for the Parish of Caddo. See Record Document 1-1. Defendants removed the suit to this Court. See Record Document 1. After conducting discovery, Defendants then filed the instant motion, seeking dismissal of Plaintiffs' claims for bad faith, mental anguish, and diminution of value. See Record Document 61.

## LAW AND ANALYSIS

I.  **Legal Standard for Partial Summary Judgment Motions**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 729. "A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine dispute of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence is in the record is insufficient with respect to an essential element of the

nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324.

II. Analysis

### a. Statutory Bad Faith Claims

Plaintiffs allege they are entitled to "bad faith" damages. The two Louisiana statutes applicable when analyzing a claim for bad faith against an insurer are La. R.S. § 22:1973 and La. R.S. § 22:1892. La. R.S. § 22:1973(A) provides that "an insurer [ ] owes to its insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." Further, La. R.S. § 22:1973(B)(5) provides that an insurer is in breach of the duties imposed by Subsection A if an insurer knowingly failed "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant *when such failure is arbitrary, capricious, or without probable cause*." (emphasis added). To prevail under La. R.S. § 22:1892(B)(1), the claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within the applicable statutory period, and that the failure to timely tender a reasonable amount was *arbitrary and capricious*. See Cooper v. Farmers. Ins. Exch., 210 So. 3d 829, 932 (La. App. 2 Cir. 2016) (emphasis added).

Thus, to recover under either statute, a plaintiff must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within the

statutory time frame, and (3) the insurer's failure to pay is arbitrary, capricious, or without probable cause. Dickerson v. Lexington Ins. Co., 556 F.3d 290, 297 (5th Cir. 2009). The phrase "arbitrary and capricious" means a "vexatious refusal to pay," "without reasonable or probable cause or excuse." Id. When the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense, the statutory penalties for bad faith are not permitted. See Reed v. State Farm Mut. Auto. Ins. Co., 857 So. 2d 1012, 1021 (La. 2003) (citing Rudloff v. Louisiana Health Services and Indemnity Co., 385 So. 2d 767, 771 (La. 1980)).

An insurer is charged with receiving a satisfactory proof of loss when the insurer has adequate knowledge of the loss. See Cotton Bros. Baking Co. v. Indus. Risk Insurers, 941 F.2d 380, 386 (5th Cir. 1991). "Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." Reed, 857 So. 2d at 1021. "[W]hen there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubt exists." Id.

Plaintiffs argue that GNIC acted arbitrarily, capriciously, and without probable cause by failing to pay Plaintiffs within the thirty-day statutory time frame. Plaintiffs argue that the thirty-day timeline runs from the initial inspection. See Record Document 89 at 6. However, Plaintiffs did not point the Court to any case supporting a rule that the statutory timeline runs from the initial inspection. Rather, a review of Louisiana's jurisprudence shows that courts unwaveringly apply the rule articulated above: an insurer is charged with receiving a satisfactory proof of loss when the insurer has adequate knowledge of the loss. See Cotton Bros. Baking Co. v. Indus. Risk Insurers, 941 F.2d 380, 386 (5th Cir.

1991); see also Aghighi v. Louisiana Citizens Prop. Ins. Corp., 119 So. 3d 930, 934 (La. App. 4 Cir. 2013) (citing Yount v. Lafayette Ins. Co., 4 So. 3d 162, 172 (La. App. 4 Cir. 2009)).

Here, the facts submitted by GNIC and admitted by Plaintiffs show that GNIC had a legitimate question as to the extent and causation of the claim after the first inspection. When Mr. Dubois provided GNIC with his First Report on February 5, 2019, he recommended that GNIC retain an engineer to determine if the roof was damaged by hail. GNIC retained Donan the very next day. On February 19, 2019, the engineer advised GNIC that the roof had overlapping hail and wear/tear damage but confirmed that there would be matching issues if just the hail-damaged shingles were replaced. Based on this information, Mr. DuBois and Mr. Friday worked to reach an agreed price. On March 11, 2019, Mr. DuBois issued his Final Report, which stated that he and Mr. Friday reached an agreement and recommended payment to Plaintiffs of $135,167.92 as the actual cash value ("ACV") of the claimed loss. On March 14, 2019, GNIC issued the ACV payment to Plaintiffs.

Similarly, Plaintiffs have not provided the Court with any evidence showing GNIC did not pay Plaintiffs within thirty days of receipt of satisfactory proof of loss for the second payment. Plaintiffs admit that GNIC was not advised of the supplemental demand until August 7, 2019. Based on this revised estimate, GNIC re-inspected the property. The re-inspection occurred on August 19, 2019. The parties agreed to the final claim amount on September 2, 2019, and GNIC overnighted the remaining check to Plaintiffs on September 17, 2019.

Finally, Plaintiffs argue that GNIC is in bad faith because Jeff Foster filed a Lien on the property totaling $44,864.57 and filed suit against Plaintiffs. Essentially, Plaintiffs argue they are entitled to bad faith damages because of civil litigation that has been filed against Plaintiffs. However, Plaintiffs do not provide the Court with any jurisprudence where a court has adopted this reasoning. Moreover, and once again reiterating, the evidence in the record shows that Plaintiffs and GNIC clearly and legitimately dispute the scope of the work. Notwithstanding this, the undisputed evidence in the record shows that any undisputed amounts have been timely tendered to Plaintiffs.

Based on the undisputed facts in the record, the Court finds that no evidence exists to support a finding that GNIC acted arbitrarily or capriciously. Specifically, Plaintiffs have not submitted any evidence that shows that GNIC did not have a legitimate question as to whether the damage may have been caused by wear and tear. On the contrary, GNIC submitted evidence that shows that once the parties reached an undisputed figure, GNIC issued payment to Plaintiffs within the statutory time frame. The Court, therefore, finds that Plaintiffs cannot establish that GNIC acted arbitrarily, capriciously, or without probable cause. Thus, Plaintiffs cannot meet their burden to show they are entitled to bad faith penalties. GNIC's motion for summary judgment on Plaintiff's bad faith claims is **GRANTED**.

### b.  Mental Anguish and Diminution of Value

Plaintiffs claim in their original Petition to have suffered "mental anguish" and "diminution of value" of their home. See Record Document 1-1 at 6. GNIC seeks summary judgment on these claims, based on the fact that Plaintiffs denied any monetary claims for mental anguish or diminution of value. See Record Document 61-3 at 11-12. Plaintiffs

did not dispute this argument in their first Memorandum in Opposition (Record Document 64), nor in their Supplemental Memorandum in Opposition (Record Document 89). As such, the Court finds that Plaintiffs did not meet their burden to show sufficient evidence in the record to prove they suffered compensable mental anguish or diminution of value damages. Therefore, GNIC's motion for summary judgment as to these claims is **GRANTED**.

## CONCLUSION

For the reasons explained above, GNIC's Motion for Partial Summary Judgment is **GRANTED**. Plaintiffs' claims for bad faith, mental anguish, and diminution of value damages are **DISMISSED WITH PREJUDICE**.

An Order consistent with the terms of this memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 17th day of August, 2023.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT JUDGE